SAMUEL SLUTZKIN and Others, Appellants, v. GERHARD & HEY, INC., Respondent.

First Department, March 4, 1921.

References — motion for order arresting and suspending prosecution of action — when court has power to order reference on motion.

On a motion for the arrest and suspension of the prosecution of an action to recover damages for the alleged fraudulent issue of a bill of lading, the trial court determined that there were disputed facts arising from conflicting affidavits filed to support the action and ordered a reference to determine seven different items, as follows: (1) Residence and citizenship of plaintiffs; (2) plaintiffs' place of business at the time of the transaction; (3) where the plaintiffs conducted their business in 1917; (4) as to whether plaintiffs had a place of business in New York; (5) as to circumstances concerning plaintiffs' negotiation of the bill of lading; (6) as to trade relations between the United States and Bolshevik Russia; (7) and as " to what extent " it was possible for defendant to ascertain the facts with respect to the transfer in Moscow, Russia, of the bill of lading and other documents in the case. The first four queries were either admitted or not controverted. The other queries were either matters to be decided at a later stage of the case or were wholly irrelevant to the motion. *Held*, that an order of reference was not proper in such case.

Orders of reference upon motions should be rarely made and should be resorted to only in exceptional cases, where the interests of justice would require the unraveling of complicated facts, which cannot be determined upon hopelessly conflicting affidavits.

APPEAL by the plaintiffs, Samuel Slutzkin and others, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 11th day of January, 1921, appointing a referee to report upon questions of fact arising upon a motion made by the defendant to stay plaintiffs' prosecution of this action.

*J. Charles Weschler* of counsel [*Weschler & Kohn,* attorneys], for the appellants.

*Chase Mellen* of counsel [*Strong & Mellen,* attorneys], for the respondent.

GREENBAUM, J.:

The action is brought to recover damages for the alleged fraudulent issue of a bill of lading. The complaint consists of two causes of action arising out of the same transaction. The first is predicated upon a common-law fraud in the issuance of a bill of lading, which falsely represented that the defendant had received from the Quaker City Morocco Company eighty cases of glazed kid, to be transported by the steamship *Kiafuku Maru* to Moscow, Russia, and to be delivered to order or his assigns, and the second cause of action for like damages for the issuance of such bill of lading, in violation of various State and Federal statutes, which prohibit the issuance of bills of lading for goods not received and bills of lading containing false statements and the negotiation of bills of lading when the goods are not in the possession of the carrier. The plaintiffs sue as holders of the negotiable bill for a valuable consideration.

The defendant demurred to the complaint for insufficiency. The plaintiffs thereupon moved for judgment on the pleadings. While that motion was pending and before the day fixed for its argument, the defendant moved " for an order arresting and suspending the further prosecution of this action by the plaintiff during the continuance of the existing conditions, including the non-existence of diplomatic relations and of intercourse and communication between the government and citizens of that part of Russia under the control of the Bolsheviki and the Government and citizens of the United States."

The motion was made upon the affidavit of Medad E. Stone, president of the defendant, in which he alleges, " on information and belief that  *  *  *  the plaintiffs herein were born in and are citizens of that part of Russia now under the control and domination of the Bolsheviki hereinafter referred to as Bolshevik Russia and that all save one of said plaintiffs are at present resident therein; that plaintiffs do not maintain any office for the transaction of business in this country and that any money that they might recover in this action would be sent into Russia and would go toward increasing the power and influence of the Bolshevik rule therein."

The sources of affiant's information and the grounds of his belief are alleged statements made to him or to his attorneys by Ezekiel Slutzkin, one of the plaintiffs, and his attorneys, that the other members of the plaintiff partnership are residents of Moscow, and from investigations conducted by the office of the attorneys for the defendant which included an examination of the directory and telephone books of the city of New York.   What the statements were alleged to have been made to affiant or his attorneys are not disclosed.   Stone further alleged, upon information and belief, that the policy and practice of the United States government as announced in numerous proclamations, notes and rulings are to prohibit all intercourse between citizens of Bolsheviki Russia and citizens of the United States; that the course of mail between the United States and Bolsheviki Russia is suspended; that no passports issue, and that the policy of the United States has amounted to a complete separation and segregation of the citizens of Bolsheviki Russia from the citizens of the United States.   In support of those statements, affiant referred to the note of Secretary of State Colby sent to Russia on August 10, 1920; a circular of the Federal Reserve Bank of New York, dated August 12, 1919; the proclamation of the President, dated June 26, 1919, and an announcement of the State Department dated July 8, 1920; but no copies of these alleged official documents and pronouncements were annexed to the moving papers, nor are they or any extract therefrom printed in the record on appeal or briefs.   On the other hand, plaintiffs in opposition to the motion submitted an affidavit of Ezekiel

Slutzkin, one of the plaintiffs, to the effect that Slutzkin Bros. have and maintain an office for the transaction of business at 15 Maiden Lane, New York, under the firm name of Slutzkin Bros.; that they are listed in the telephone directory, a copy of the directory on which the firm name appeared being annexed. The affiant further alleged as follows: " Of the four plaintiffs, myself, Moise Slutzkin and Abraham Slutzkin were born in Riga, which is not under the domination and control of the Bolsheviki and is not part of Bolsheviki Russia, but is part of the country known as Latvia, but irrespective of the birth place of the four plaintiffs, they all resided in Riga until 1915, in the early part of the war and were citizens of that part of Russia, which is known as Latvia. At that time Riga was threatened with invasion by Germany and all of the residents of Russia were ordered to evacuate and my family, including all of the plaintiffs, thereupon left Riga and went to Moscow. We resided in Moscow until 1918 as refugees. In July, 1918, I escaped from Moscow. Neither I nor any of my brothers had ever intended living there but it had been forced upon us. All of our property was taken away from us and we have not participated in the Bolsheviki rule or submitted to their jurisdiction but escaped as early as we could. After I escaped from Moscow two of my brothers escaped. Three of the plaintiffs, including myself, went to Copenhagen, where we went into business under the name of the Russian American Company — Leather Trade; this business is still in existence with a capital of one million kronen and  *  *  * belongs to the plaintiffs and no one else is interested therein. My other brother, one of the plaintiffs had in the meantime left Russia and never returned to Russia, except for one week to visit me and that was in 1915. He was a representative of the plaintiffs in Stockholm and opened a business there and later joined the other brothers in Copenhagen. In August, 1919, my brother Abraham and I came to New York and intended to remain and make this our home. We started in business here, all of the plaintiffs being exporters here and have continued and intend to continue as such and I intend to become a citizen of this country as well as my brother Abraham. My brother Abraham is now in Riga on a business matter, having left New York for that purpose only and intending to return shortly to

remain here, except insofar as he may have to travel abroad on business. My two other brothers, Samuel and Moise have charge of our business of the Russian American Company at Copenhagen. They are there now and all of us have left Russia with no intention of ever returning excepting perhaps if we desire to return for visits and perhaps to reclaim our property that was taken from us by the Bolsheviki in Moscow, if such an opportunity will ever present itself."

The affidavit further shows that the person from whom the bill of lading was purchased, one Necha Borenstein, is now in New York as are also her manager and various officials of the bank in which the bill of lading transaction was handled. To this affidavit the defendant submitted a replying affidavit of Abraham J. Stybel that the firm of I. Slutzkin & Sons had a shoe factory in Moscow from 1916 until 1918 and that " all business people, including manufacturers, had evacuated the city of Riga at the time I commenced business in Moscow and many of them, including the said firm of I. Slutzkin & Sons, carried on their business and factory after the evacuation of Riga in the city of Moscow." That affidavit, instead of being a denial of any statements contained in the plaintiffs' affidavit, is entirely corroborative of what the plaintiffs alleged. Upon these affidavits and papers the court held that there were disputed facts and made an order referring the matter to a referee, to take proof as to seven different items and staying all proceedings in the interim.

These seven items about which the referee was appointed to inquire may be summarized as follows: 1. As to the question of the residence and citizenship of plaintiffs. As to this it is to be observed that the plaintiffs' affidavit fully sets forth the facts in that regard, which are not controverted by the defendant. 2. As to plaintiffs' place of business in Moscow when the transactions in suit arose. That is also fully explained in the affidavit of the plaintiffs and is not controverted. 3. As to where the plaintiffs conducted business in December, 1917. The complaint admits that the transactions in question took place in Moscow. 4. As to whether plaintiffs have a place of business in New York. That was fully set forth in the plaintiffs' affidavit and defendant's assertion that the telephone directory did not disclose the place of business of plaintiffs was

controverted by the submission of a copy of the page of the directory in which their place of business appears. 5. As to the circumstances attendant upon the plaintiffs' negotiation of the bill of lading in suit. 6. As to what extent there exists commercial intercourse or means of communication between citizens of the United States and citizens of Bolsheviki Russia, which could only properly be shown by official documents. 7. As " to what extent," if any, it is possible for defendant to ascertain the facts with respect to the transfer or alleged transfer in Moscow, Russia, in December, 1917, or thereafter of the bill of lading and other documents involved in this action.

It thus appears that an examination is directed concerning the allegations in defendant's moving papers, which are unsupported by any facts; to an investigation of the diplomatic relations between Russia and the United States which it was incumbent in the first instance upon the defendant to show, and matters which might be appropriate after issue had been joined upon the service of an answer affecting the merits of plaintiffs' causes of action, but which are wholly irrelevant to the motion for a stay and which were not asked for in the notice of motion.

It appears from a copy of the printed circular alleged to have been obtained by plaintiffs from the Deputy Governor of the Federal Reserve Bank, dated August 12, 1919, and printed in the record on appeal, that the " present situation is, therefore, that all restrictions have been removed from the export of coin, bullion and currency and from transactions in foreign exchange except as to (1) transactions with or for persons in that part of Russia now under control of the so-called Bolshevik Government; (2) the importation of, or exchange of transactions in Russian rubles."

It will thus be noted that whatever restrictions of intercourse with Russia do exist, they are limited to that part of Russia now under -the control of the so-called Soviet Government.

This court had occasion recently to reiterate the well-settled practice in this State that orders of reference upon motions should be rarely made and should be resorted to only in exceptional cases, where the interests of justice would

require the unraveling of complicated facts, which cannot be determined upon hopelessly conflicting affidavits. Moreover, in the papers as submitted there appears to be no reason for staying plaintiffs' active prosecution of this action.

It will be ample time to stay the payment of money to plaintiffs by defendant if and when judgment is rendered and if and when defendant is prepared to pay over the money upon any such judgment and if it should then appear that the plaintiffs are Russian citizens and that the relations between Russia and our government are such as to require the withholding of plaintiffs' receipt of any moneys payable under the judgment.

The order appealed from is reversed, with ten dollars costs and disbursements, and the motion to stay plaintiffs' proceedings is denied, with ten dollars costs.

CLARKE, P. J., LAUGHLIN, DOWLING and MERRELL, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion for stay denied, with ten dollars costs.